UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:23-CV-00378-JHM

CLYDE LITTON                                                                                                 PLAINTIFF

v.

COOKIE CREWS, *et al.*                                                               DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendants Hunter McPherson, Adam Parrott, and Willard O'Bryan for summary judgment pursuant to Federal Rule of Civil Procedure 56. [DN 66]. Plaintiff Clyde Litton filed a response. [DN 78]. Defendants did not file a reply. Fully briefed, this matter is ripe for decision.

**I. BACKGROUND**

Plaintiff filed the instant *pro se* action under 42 U.S.C. § 1983 against Defendants Kentucky State Penitentiary ("KSP") Correctional Officers McPherson, Parrott, and O'Bryan and others arising out of the use of pepper spray on Plaintiff on July 22, 2022. [DN 1]. In his verified complaint, Plaintiff alleges that while he was in Segregation Dorm 3 at KSP, a guard, now identified as McPherson, came to the door and said, "remember UA Carmin?" [DN 1 at 4; DN 1-6 at 2]. Plaintiff states that McPherson then began spraying him with pepper spray and did not stop until Plaintiff blacked out. [*Id.*]. Based on the KSP incident summary report, Plaintiff alleges that after McPherson employed the original burst of pepper spray, O'Bryan also used pepper spray on Plaintiff. [DN 1-6 at 2]. Plaintiff maintains that Parrott witnessed the incident and failed to render aid to Plaintiff. [*Id.*]. Plaintiff asserts that as a result of Defendants' conduct, he is now blind. [*Id.*]. Plaintiff claims that the attack was in retaliation for his confrontation of Kentucky State Reformatory ("KSR") Correctional Officer Shawn Carmin about "not getting canteen and spending limits" while

he was housed at KSR.  [*Id.*].

The Court conducted an initial review of the complaint and supplemental complaint pursuant to 28 U.S.C. § 1915A and allowed First Amendment retaliation and Eighth Amendment excessive-force claims to proceed against KSP Officers McPherson, Parrott, and O'Bryan in their individual capacities.  [DN 11, DN 28].  McPherson, Parrott, and O'Bryan now move for summary judgment on Plaintiff's remaining claims.  [DN 66].

## II.  STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]"  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings, and a party's "status as a pro se litigant does not alter his duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992); 28 U.S.C. § 1746.

### III. DISCUSSION

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

#### A. Retaliation

Plaintiff asserts First Amendment retaliation claims against McPherson, Parrott, and O'Bryan for Plaintiff's confrontation of KSR Correctional Officer Carmin. Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*,

3

175 F.3d 378, 394 (6th Cir. 1999) (*en banc*).  To set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  A plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  If the plaintiff establishes "'his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant,' who may prevail on summary judgment by showing that 'he would have taken the same action in the absence of the protected activity.'"  *Vaughn v. Underwood*, No. 3:20-CV-P317-RGJ, 2022 WL 4693908, at *2 (W.D. Ky. Sept. 30, 2022) (quoting *Thaddeus-X*, 175 F.3d at 399).

Plaintiff fails to satisfy the first element of a retaliation claim.  Plaintiff states that Defendants' use of pepper spray on him was in retaliation for his confrontation of KSR Correctional Officer Shawn Carmin about Plaintiff "not getting canteen and spending limits" while he was housed at KSR.  [DN 1 at 4].  The Sixth Circuit has recognized that verbal complaints can constitute protected conduct.  *See Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) ("An inmate has a right to file 'non-frivolous' grievances against prison officials on his own behalf, whether written or oral.")  (citation omitted).  However, Plaintiff's statements made on February 8, 2022, while confined to the restricted housing unit at KSR contradicts his statement made in his verified complaint in July 2023.  Specifically, the record reflects that Plaintiff told a KSR psychology associate that he had been admitted to the restricted housing unit because he had held "an officer hostage." [DN 66-20 at 15].  In his response to Defendants' motion for summary judgment, Plaintiff

does not refute this earlier statement he made to the psychology associate regarding Correctional Officer Carmin. Holding a correctional officer against his will is not conduct protected by the First Amendment. As such, Plaintiff's claim fails on the first element of the analysis.

Furthermore, even if the Court were to find that a dispute of fact exists as to the first prong, Plaintiff fails to satisfy the third prong—the adverse action was motivated at least in part by the Plaintiff's protected conduct. *Thaddeus-X*, 175 F.3d at 394. Despite Plaintiff's statement in his verified complaint, the video record reflects that on July 22, 2022, Plaintiff was suffering from a substance-induced psychosis and was naked, rolling around in his feces. [DN 66-3, Video KSP-2022-7-092 part 1 Cell Removal]. The record further reflects that both McPherson and O'Bryan, the two correctional officers who administered the pepper spray, each state in their respective declarations that they knew nothing about any confrontation between Plaintiff and Correctional Officer Carmin at KSR. [DN 66-24; DN 66-25]. In fact, both McPherson and O'Bryan state they do not even know Shawn Carmin. [*Id.*] Plaintiff offers no evidence to refute McPherson and O'Bryan's declarations. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005). Accordingly, the Court finds that Plaintiff has also failed to demonstrate a retaliatory motive on the part of Defendants.

Therefore, the motion for summary judgment will be granted with respect to the retaliation claims.

### B. Excessive Force

Plaintiff asserts Eighth Amendment excessive-force claims against McPherson and O'Bryan for their use of pepper spray against him on July 22, 2022.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The ban on cruel and unusual punishments prohibits the "'unnecessary and wanton infliction of pain'" on prisoners. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). An Eighth Amendment claim has objective and subjective components. *Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023); *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). "Objectively, harm to a prisoner must rise to a sufficiently serious level because the Eighth Amendment prohibits only 'cruel and unusual' deprivations, not just uncomfortable or 'even harsh' ones." *Johnson*, 79 F.4th at 615 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "Subjectively, harm to a prisoner must result from a prison official's sufficiently volitional actions because the Eighth Amendment bars only willful conduct that 'inflict[s]' 'punishment,' not accidental conduct that causes injury." *Johnson*, 79 F.4th at 615 (quoting *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021)).

The subjective inquiry focuses on "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Hudson*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). To determine the good faith of the alleged assailant, courts should consider the reasons or motivation for the conduct, the type and excessiveness of the force used, and the extent of the inflicted injury. *See id.* at 7. The Supreme Court has recognized that the extent of an inmate's injury may be suggestive of whether force was applied in a good-faith manner, *see id.*, and the extent of force involved. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "More generally, [the Sixth Circuit has] added that, while judges may review an encounter by slowing down, pausing, and replaying a video, officers have no such luxury. They must make quick decisions in the heat of the moment." *Johnson*, 79 F.4th at 618. As

a result, the Sixth Circuit instructs courts to "defer to [the officer's] decisions and avoid 'unreasonable post hoc judicial second-guessing' of their conduct. *Id.* (quoting *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008)).

In their motion for summary judgment, Defendants argue that the video footage of the relevant incident shows that every action they took was necessary to respond to Plaintiff's substance-induced psychosis and to regain control of Plaintiff so as to ensure his safety and the safety of the officers responding to the incident and to restore institutional control.  Plaintiff argues that Defendants did not have to use pepper spray on him.  He relies on his own declaration and the video of the incident and video of the surrounding days which he claims supports his version of the events.

The undisputed evidence shows that on July 16, 2022, Litton was housed in general population when he began holding piece of plastic to his wrist and calling on God to "take this devil" out of him because he took some pills another inmate gave him.  [DN 66-20 at 23–26, 39, 88, 127; DN 66-6, Video KSP-2022-7-062-6CH to ERC].  On that day, he was placed in the restricted housing unit.  [DN 66-20 at 23–26, 39, 88, 127].  The medical and video records reflect that while he was under the influence of these drugs, he was naked, ranting incoherently, and smearing feces and urine all over himself and his cell.  [*Id.* at 39, 53; DN 66-3].  The medical records further reflect that during this conduct, he introduced *enterococcus faecalis*, a bacteria in the intestines, into his eyes eventually developing bilateral corneal ulcers.  [DN 66-20 at 7–8, 127; DN 66-21 at 3–8, 17–18].  Because of Plaintiff's substance-induced psychosis, the record reflects that correctional officers and medical staff intervened on several occasions throughout July 2022.  [DN 66-18; DN 66-20]. The record further reflects that of the incidents captured on video provided by KSP, Defendants were involved in only the July 22, 2022, incident.  [DN 66-3].

The incident report summary reflects that on July 22, 2022, Plaintiff was housed in the restricted housing unit and was on constant watch. [DN 66-2 at 1]. McPherson notified O'Bryan that Plaintiff and his cell were covered in feces and urine. [*Id.*]. Plaintiff's toilet was also full of waste, and Plaintiff was splashing the contents around the cell and onto himself. [DN 66-2 at 1]. The video record confirms that Plaintiff and his cell was covered with feces and urine and that he was splashing the contents of the toilet on himself, the cell, and outside the cell. [DN 66-3, Video KSP-2022-7-092 part 1 Cell Removal]. A protective plexiglass screen had to be placed in front his cell door. [*Id.*]. O'Bryan, Unit Supervisor, authorized McPherson to remove Plaintiff from the cell so it could be cleaned. [DN 66-2 at 1]. McPherson and Parrott approached Plaintiff's cell door and instructed him to stop splashing the toilet water and to come to the cell door. *Id.* Plaintiff did not comply with those commands. [*Id.*]. McPherson employed a burst of pepper spray to prompt Plaintiff to comply. [*Id.*]. Plaintiff refused. McPherson informed O'Bryan that Plaintiff refused to comply, and O'Bryan authorized a cell entry team to remove Plaintiff from the cell for decontamination. [*Id.*]. At that point, an officer began filming with a handheld camera. [*Id.*; DN 66-3, Video KSP-2022-7-092 part 1 Cell Removal].

The video record reflects that O'Bryan ordered Plaintiff to back up to the cell door which he refused to do. Instead, Plaintiff placed his arms out of the front of the cell, pulled his arms back into the cell, and began yelling. [DN 66-3, Video KSP-2022-7-092 part 1 Cell Removal]. O'Bryan then deployed a burst of pepper spray striking Plaintiff which did not subdue him. [DN 66-2 at 2; DN 66-3]. O'Bryan again ordered Plaintiff to back up to the cell door, and Plaintiff refused; at that time, O'Bryan deployed his taser twice striking Plaintiff around the belly button and then on his stomach and thigh. [*Id.*]. The cell entry team in white protective suits then restrained Plaintiff and carried him to a restraint chair in the shower. [*Id.*]. The video reflects that the cell entry team were

8

covered with feces after they accomplished the extraction. [DN 66-3]. The biohazard team then cleaned the cell. [DN 66-2 at 2].

The Sixth Circuit has held that use of pepper spray to force an inmate's compliance with direct orders is not excessive. *See Cretacci v. Call*, 988 F.3d 860, 869 (6th Cir. 2021) (holding that the defendant corrections officer's use of pepperballs on a pretrial detainee who failed to comply with an order to get on the ground was reasonable given that the defendant used a non-lethal weapon that caused only minor injuries that lasted a few days); *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (holding that defendant corrections officers did not violate the Eighth Amendment by using pepper spray on the plaintiff when he refused their repeated orders to leave the shower); *Siggers v. Renner*, 37 F. App'x 138, 140–41 (6th Cir. 2002) (use of pepper spray to force the plaintiff to submit to a haircut was not excessive). In light of the undisputed evidence and this jurisprudence, the Court concludes that no reasonable jury could find that McPherson or O'Bryan used excessive force when they deployed the pepper spray under the conditions reflected in the video record and the incident report.

Accordingly, the motion for summary judgment will be granted with respect to the excessive-force claims.

### C. Failure to Intervene

Plaintiff alleges that Parrott is liable for excessive force because he witnessed O'Bryan and McPherson's use of excessive force on July 22, 2022, and failed to intervene.

An officer is liable for another officer's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' and 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir.

1997)). Accordingly, without the occurrence of excessive force, no failure-to-intervene claim exists. *See Hunt v. Sunquist*, 822 F. App'x 468, 478–79 (6th Cir. 2020) ("If no excessive force was used, [defendant] cannot be responsible for failing to intervene."); *Johnson v. Cnty. of Kalamazoo*, No. 1:23-CV-138, 2023 WL 3309302, at *4 (W.D. Mich. Apr. 21, 2023) (court's conclusion that no excessive force in violation of the Eighth Amendment occurred was "fatal to the failure-to-intervene claim . . . because an underlying constitutional violation is required."), *report and recommendation adopted*, No. 1:23-CV-138, 2023 WL 3303855 (W.D. Mich. May 8, 2023).

Having determined that no excessive force was used, Plaintiff's failure-to-intervene claim against Parrott fails as a matter of law. The Court will grant Defendants' summary-judgment motion on this claim as well.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendants McPherson, Parrott, and O'Bryan for summary judgment [DN 66] is **GRANTED**. The Court will enter a separate judgment consistent with this Memorandum Opinion and Order.

Date: March 31, 2025

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
　　Counsel of Record
4414.014